## PATRICK MORAN
### v.
## CAROLINE PELLIFANT.

*Real Property—Incumbrance Assumed by Grantee—Bill to Compel Performance—Statute of Limitations—Parties—Amount Due—Interest.*

1.   Upon a bill to require the grantee in a conveyance of real property to pay an incumbrance assumed by him as part of the purchase money, and to recover interest subsequently paid thereon by the grantor, it is *held:* That the alleged ignorance of the defendant is insufficient to overcome the clause in his deed whereby he assumed said incumbrance; that, in the absence of proof to the contrary, he must be regarded as a man of reasonable intelligence and business qualifications; and that the burden was upon him to overcome the evidence of the deed and of the complainant's testimony.

2. The retention of a portion of the purchase money by the grantee, the deed providing that such sum shall be applied in payment of an incumbrance thereon, which he assumes, constitutes him the grantor's trustee, and he can not plead the statute of limitations to a bill to require him to discharge such indebtedness.

3   A decree will not be reversed for want of necessary parties, unless it affirmatively appears that the party in question was interested in the subject-matter of the suit before the commencement thereof.

4. The statute of limitations of 1872 is inapplicable to a note made in 1869.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Lake County; the Hon. C. W. UPTON, Judge, presiding.

Messrs. JONES & FISHER, for appellant.

Messrs. COOK & UPTON, for appellee.

C. B. SMITH, J. This was a bill brought against Patrick Moran and Peter Connolly in the Lake Circuit Court, by Caroline Pellifant, for the purpose of compelling Moran to pay a certain note of $400 and accrued interest which he had agreed to pay.

The bill in substance alleges that on the 12th of July, 1869, complainant owned the southeast quarter of the southwest quarter, section 19, town 45 north, range 12 east, in Lake county, Illinois, and that on that day she executed to W. H. Ellis a trust deed on all of said land to secure the payment of her note of that date to Peter Connolly for $400 and interest at ten per cent. per annum; that said trust deed was recorded in Vol. 35 of Mortgages, on page 78; that on September 14, 1875, the complainant, Caroline Pellifant, sold the east twenty-three acres of the said lands to Patrick Moran for $1,150; that at that time there was due to Peter Connolly upon the note and trust deed aforesaid, $400, principal, and $46.66, interest, which said Moran assumed and agreed to pay as a part of the consideration of the deed to him from Pellifant, but that Moran has not paid the same.

That soon after the execution of said deed from Pellifant to Moran, said Moran induced Peter Connolly to consent to a release of said trust deed as to the twenty-three acres bought by Moran. Said bill makes Patrick Moran and Peter Connolly defendants, and prays for an accounting of the amount due Peter Connolly upon said note, and of the amount of interest thereon paid by Mrs. Pellifant to Connolly upon said note after she sold the twenty-three acres to Moran, and that Moran be decreed to pay the amount due Peter Connolly, and to pay to Caroline Pellifant the amount paid by her to Connolly as interest on said note and interest on said several amounts so paid by her.

The answer of defendant Moran filed March 17, 1888, admits that he purchased the twenty-three acres in question September 14, 1875, for $1,150, but denies any knowledge of any condition in the deed requiring Moran to pay Connolly $446.66 as alleged in the bill. Said answer avers that defendant Moran at the time he took the deed from Pellifant, paid her $700 in cash and gave her two notes of $225 each, and secured the same by mortgage on said twenty-three acres and that said notes had been paid and satisfied and that the said full purchase price of the twenty-three acres has been paid Mrs. Pellifant by Moran.

The answer also sets up and relies on the ten year statute of limitations, as to any contract to pay the Connolly note, but omits to plead and rely on the said statute as to his alleged liability to pay Mrs. Pellifant the interest she paid on said note, after he had assumed the payment of it.

The case was heard at the March term, 1888, and a decree was rendered in conformity with the prayer of the bill and Patrick Moran was decreed to pay Peter Connolly $488.66, the amount of principal and unpaid interest then due on said $400 note, and also to pay Caroline Pellifant $454, which was the amount of interest she had paid on the $400 note after Moran had agreed to pay the same, with six per cent. interest on such payments up to the date of such decree. These two amounts were decreed to be liens against the said twenty-three acres in conformity to the prayer of the bill. Defend-

Moran v. Pellifant.

ant Moran now appeals to this court and brings the record here for review and insists that the decree is erroneous in finding him liable to pay said money or any part thereof. Peter Connolly made no defense as no relief was asked against him, and as to him a default was entered.

Defendant Moran admits buying the land and that he was to pay $1,150 for it, and insists that he has fully complied with his undertaking. He testifies that at the time the purchase was made he paid cash down $700 and gave two promissory notes for $225 each, making the sum of $1,150, and that he executed his mortgage to secure the notes, and has since paid both of said notes and had his mortgage released. On the contrary, complainant testifies that he only paid cash down $300 and executed his two notes for $225 each, making in all $750 to be paid her, and that he assumed the $400 note and mortgage due Peter Connolly and that the agreement was put in the deed given him. She also testifies that after assuming the payment of the note the defendant did not either pay the note or the accruing interest, and that Connolly kept demanding the interest of her and that she kept paying it until July 12, 1885.

The sale was made to defendant Moran September 14, 1875. Her only explanation for paying interest on this note after Moran had agreed to pay it, is, that Connolly kept demanding it from her and that Moran did not pay it and that she knew nothing of Moran. There is no proof that she ever demanded that Moran should pay the note and interest until she brought this bill. Moran and his daughter both testify that they went to complainant's house and asked her what she sued him for, and that she then admitted that Moran had paid her $700 cash, but complainant testifies in reply to this, that what she said and meant on that occasion was, that the $700 included the two notes of $225 each.

The agreement on the part of appellant to pay the note given Connolly was recited in the deed from appellee to him as follows:

" This conveyance is made subject to the payment of a certain note made and executed by Caroline Pellifant to Peter

Connolly for the principal sum of four hundred dollars, dated July 12, 1869, and secured by trust deed of that date, to Warren H. Ellis, as trustee, which deed is recorded in Lake county, in Vol. 35 of Deeds, page 78. Upon said note there is now due the sum of four hundred and forty-six dollars and sixty-six cents, which the grantee herein is to pay and discharge as part and parcel of the consideration of this conveyance."

The defendant seeks to avoid the force of this provision in his deed by saying that he did not know it was in his deed, and that he did not read his deed and had it recorded without reading. In the absence of proof to the contrary we must treat defendant Moran as a man having reasonable business qualifications and of reasonable intelligence. In the light of this presumption and the evidence in the case, we regard his explanation of this clause in the deed as wholly insufficient. He does not deny that Brown drafted the deed which he accepted, and the mortgage which he gave. It is unreasonable to suppose that he bought this land at $50 per acre without knowing anything about the title or having made any examination of the record. He himself says that he and Connolly called on plaintiff a few days before the purchase and talked with her about it. In a few days after he got this deed he went to Connolly and procured the release of Connolly's mortgage as to that twenty-three acres, leaving it all in force as to the other seventeen acres which complainant had not sold. These facts alone create a very strong presumption that he knew before and after he bought the land that this mortgage was on it, and to suppose with this knowledge he would buy the land and pay the full purchase price for it with the incumbrance still on it, would do violence to his intelligence and be utterly inconsistent with the ordinary methods of transferring titles.

Nor is it consistent with reason or common experience that men accept deeds without reading them or having them read to them and so not knowing what land or what title they are getting or what incumbrance they are assuming. If the testimony of defendant is to be relied on, then he simply gave $1,150 for

this land, neither knowing nor caring what title he got nor with what incumbrance it was burdened.   But upon these points he is directly contradicted by complainant, who swears he did know of the incumbrance, and that he did assume it and agree to pay it as a part of the purchase money; that he has not done so; that he did read the deed, or that it was read to him, and that he knew its covenants.

But the deed itself is the best evidence of the contract, and is infinitely stronger than the recollections of parties after the lapse of twelve years, however honest they may be.   It would be a most reckless and dangerous proceeding to allow parties to come into court and swear away their own solemn admissions and contracts in deeds, years after they have been made.

If this could be done, no covenant in a deed would be safe either against cupidity or forgetfulness.   If, in fact, any mistake was made in this deed, and this burden of paying the $400 note wrongfully imposed on the defendant, he knew very soon afterward, when he got Connolly to release the mortgage as to that land, that such provision was in the deed, and it was his duty then to have asked complainant to correct the mistake; and, failing in that, he should have appealed to a court of equity to reform the deed when facts were all fresh in the minds of the parties.   The only fact militating against complainant's claim is the fact that she continued to pay interest on this note annually for about ten years after the date of the deed, and without asking the defendant to do it, or to pay the note.

This circumstance is not without force.   But the force of it is much weakened when we remember that the mortgage was still an incumbrance on her remaining seventeen acres, and to protect it she must see to it that the interest or note was paid. Connolly made his demand against her annually for his interest.   Connolly had, by his own wrongful act, released Moran, or at least released his mortgage on Moran's twenty-three acres, and, so far as it was in his power, threw the whole burden of the mortgage on Mrs. Pellifant's seventeen acres.   She swears that she knew nothing about Moran after he paid the two notes made to her.   She was an old palsied woman, weakened

in body and mind, as the nature of her affliction would indicate. We can not hold that this circumstance is of sufficient force of itself to overcome the conclusive evidence in this record of the defendant's liability. When the plaintiff produced the note and the deed, she made a *prima facie* case, and the burden was then shifted on the defendant to show payment and to overcome the evidence of the deed and plaintiff's own testimony. This he failed to do.

Defendant pleads the ten year statute of limitations, approved April 4, 1872, and pleads it to the note itself. Nothing is said in his plea or answer as to any bar for interest paid by Mrs. Pellifant. The $400 note was made on July 12, 1869, and was governed by the sixteen year statute of limitations.

The plea of the statute of limitations meeting no claim presented by the complainant in the proof, calls for no further discussion. We will say, however, that even if the proper statute had been pleaded, and to cover the whole claim, it can have no application to this case under the authority of C. & E. I. R. R. Co. v. Hoyt et al., 119 Ill. 493. The defendant by his agreement became a trustee for complainant and could not plead the statute of limitations.

The defendant also insists that one Peter Smith, who now claims to own this twenty-three acres of land, should have been made a party to the suit, and that, he having an interest in the land, it was error to decree the sum found due a lien on the land without having made him a party to the suit.

This position would be correct if the record showed that he bought the land before the commencement of the suit, but it does not. If he bought after the commencement of the suit he is not a necessary party. A party can not buy into a law suit and thereby make himself a necessary party. We can not reverse this decree for want of necessary parties, unless it affirmatively appears they are such.

The only remaining point urged against the decree is that the court erred in computing the amount due, and that the decree is in excess of the amount actually due. We do not find the court erred in its calculation or in stating the account,

which was done by agreement of the parties. Finding no error in the record, the decree of the Circuit Court is affirmed.

*Decree affirmed.*

Mr. Justice Upton took no part in this case, having tried the case below.