Chicago Assets Company, Defendant in Error, v. Austin A. Watrous et al., Defendants. Slater C. Brockman and Anna M. Brockman, Plaintiffs in Error.

Gen. No. 34,486.

Opinion filed June 26, 1931.

MECARTNEY & DUFT, for certain plaintiffs in error; LUTHER F. BINKLEY, of counsel.

HARPER E. OSBORN, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

To reverse a foreclosure decree, entered on May 2, 1930, following the recommendation of a master, this writ of error was sued out on May 29, 1930, by Slater C. Brockman (a bachelor) and Anna M. Brockman (a widow and mother of Slater C. Brockman), two of the defendants to the bill and hereinafter referred to as the Brockmans. No supersedeas was applied for. On February 19, 1931, an order of severance was en-

tered and the Brockmans were given leave to prosecute the writ of error alone.

In complainant's bill, filed December 17, 1928, it is alleged that on March 30, 1928, Watrous and wife executed and delivered their promissory note for $20,000, payable to the order of themselves and by them indorsed, by which they promised to pay said sum as follows: $300 on April 30, 1928, and $300 on the 30th day of each and every month for four months succeeding, and final payment of $18,500 on September 30, 1928, with interest thereon at the rate of 6 per cent per annum, payable monthly on the 30th day of each month on the whole amount of the principal sum remaining from time to time unpaid, and with interest on each instalment after maturity at the highest lawful rate; that to secure the note and interest they on the same day executed and delivered their trust deed, conveying to the Chicago Title & Trust Co., as trustee, certain improved real estate (describing it) in the Village of Oak Park, Illinois; that the trust deed, recorded March 31, 1928, contained covenants usual in such deeds (some of them enumerated); that it was recited that the deed was "subject to a prior trust deed to Garfield State Bank of Chicago, dated March 29, 1928, given to secure an indebtedness of $125,000"; that complainant is the legal holder and owner of the $20,000 note; that there has been paid on account of principal $1,750,—leaving a balance due to complainant of $18,250, together with interest at the rate of 7 per cent from September 30, 1928; that on October 15, 1928, complainant was obliged to pay and did pay $3,750, interest due on said prior trust deed, to protect its lien; that on May 9, 1928, the grantors in the trust deed conveyed by warranty deed the premises to the Brockmans in joint tenancy, which deed was recorded on May 11, 1928; that it was provided therein that the grantees (the Brockmans) *"assumed and*

*agreed to pay* the indebtedness secured by the trust deed herein being foreclosed and also said first mortgage indebtedness''; that on May 9, 1928, the Brockmans conveyed the premises to the Central Oak Park State Bank, to secure an indebtedness of $5,000, but that its right or interest in the premises by reason of the conveyance is subsequent and inferior to complainant's lien; that to further secure the $20,000 indebtedness Watrous and wife made a written assignment to Homer H. Schneider (president of complainant) of the rents and profits arising from the premises, which assignment was dated on March 30, 1928, and recorded on October 2, 1928; that the premises are only partially rented and are poorly managed; and that the rents are not sufficient to pay interest, taxes, insurance, repairs and other necessary expenses.

The bill prayed for an accounting, a receiver and a foreclosure of the trust deed, and also that a *deficiency decree* be entered against the Brockmans, in case the premises should not sell for a sum sufficient to pay the indebtedness due to complainant, interest, solicitors' fees, costs, etc.

On December 21, 1928, the Chicago Title & Trust Co. was appointed receiver of the premises. The Brockmans, Watrous and wife and the Central Oak Park State Bank filed answers. Other defendants were defaulted. In the original answer of the Brockmans, filed February 7, 1929, after denying certain allegations of the bill, they alleged as defenses (a) that the $20,000 note was usurious, and (b) that in the deed of the premises to them from Watrous and wife, dated May 9, 1928, they did *not* assume and agree to pay said indebtedness. They further alleged that they purchased the premises from Watrous and wife ''under a contract for sale, which contract was closed and consummated through the escrow department of the Chicago Title & Trust Co.''; that Watrous and wife,

or parties acting for them, "with intent to defraud these defendants, caused to be placed on record a deed conveying the premises to these defendants, and fraudulently and maliciously inserted in such deed various statements purporting to be to the effect that the grantees (these defendants) assumed and agreed to pay certain alleged obligations, and that these defendants first received notice of such fraudulent and malicious act through the bill filed herein." Subsequently the Brockmans filed an amended answer, and also a cross-bill making similar allegations. Theo. Ebert & Co., a corporation, by leave of court, filed an answer in the nature of an intervening petition, wherein it claimed, by virtue of a contract with the Brockmans, a mechanic's lien on the premises. On April 9, 1929, the cause was referred to a master to take proofs and report the same, together with his conclusions on the law and the evidence. Commencing on April 19, 1929, and ending on November 15, 1929, there were numerous hearings before him at which considerable oral and documentary evidence was introduced.

On February 4, 1930, the master filed his report in which, after making numerous findings, he stated that on behalf of the Brockmans it was contended that they "never inspected" the warranty deed (dated May 9, 1928) of the premises to them, and that they "are not bound by the statements in said deed"; that on behalf of the Title & Trust Co. testimony was offered to the effect that said deed "was examined both by said Slater C. Brockman and by his attorney at the time of the making of the original escrow agreement"; and that "If the defendants (the Brockmans) and their attorney failed to examine the deed of conveyance, whereby the property was conveyed to them, but relied upon their escrow agent (Title & Trust Co.) to protect their interests in the matter, and thereafter went into possession of the premises under and by virtue of the

deed in question, it is incumbent upon them to show by a clear preponderance of the evidence that the deed in question is not in accordance with the agreement made by them. They have shown that the words in said deed, 'Slater C. Brockman and Anna M. Brockman, not as tenants in common but in joint tenancy,' and the words 'City of Chicago' in the following line, were not typewritten in said deed upon the same typewriter used in typewriting the remainder of said deed, but that proof in itself is not sufficient, in my opinion, to prove anything but that the names and the words in question were inserted after the deed was originally written. It is clear from the testimony, however, that those words were in the deed in question at the time the same was executed by said Austin A. Watrous and Sadie L. Watrous and at the time of the delivery of the deed to the Chicago Title and Trust Co.

"I therefore find that the cross-complainants have failed to prove the allegations of their cross-bill of complaint by a preponderance of the evidence and I recommend that the cross-bill . . . be dismissed as without equity.

"I further find that all the material allegations of complainant's bill have been proven and are true, and that complainant is entitled to the relief therein prayed. I therefore recommend that the usual decree of foreclosure be entered herein in accordance with the prayer of such bill and the findings of this report."

The overruled objections of the Brockmans to the report were ordered to stand as exceptions before the court. On February 25, 1930, on their motion, the court ordered that they be given leave to withdraw their answer, amended answer and cross-bill and to file a "second amended answer," all without prejudice, and that complainant's replication stand as such to the second amended answer.

This answer is lengthy. Some of the allegations are that on April 30, 1928, the Brockmans and Watrous executed a written contract whereby the Brockmans were to convey to Watrous two (2) pieces of improved real estate in Chicago and to pay to him the sum of $2,500 in cash, in consideration of the conveyance by him to them of the premises in question, *subject to* two (2) mortgages (i.e., said first mortgage of $125,000 and the mortgage herein being foreclosed); that complainant had agreed to loan to Watrous $19,000, taking as security therefor a note of $20,000, dated March 30, 1928, and secured by the trust deed herein sought to be foreclosed; that Homer H. Schneider, president of complainant, knew of the contract between the Brockmans and Watrous; that, "notwithstanding the fact that said *contract* did not provide for the assumption of the mortgages by these defendants (the Brockmans) and provided for a clear title *subject* only to two (2) mortgages," Schneider took Watrous' written assignment of the rents of the premises and he claims to hold the assignment as additional security for complainant; that Schneider was aware of the law that the $1,000 excess would bring the loan within the Illinois statute in respect to usury; that he "entered into a conspiracy with Watrous" to have the deed conveying said premises contain a clause whereby the Brockmans assumed and agreed to pay said indebtedness and also that said conveyance would be subject to the assignment of rents; that the Brockmans borrowed and received from the Central Oak Park State Bank $5,000 in cash, giving their note for that amount secured by a trust deed on said premises; that on May 9, 1928, they deposited "a portion" of said loan in another escrow with the Title & Trust Co.,—Escrow No. 73075; that there also was deposited the contract between them and Watrous; and that the escrow agreement recited that Watrous therewith handed to the escrowee a war-

ranty deed, conveying the premises, and provided that the deeds deposited therein should be recorded at once.

It is further alleged in the answer that thereafter on May 11, 1928, complainant "without the knowledge or consent" of the Brockmans, deposited in escrow, No. 73022, $18,600, with directions to the escrowee to pay the same to Watrous "upon the indorsement of said note by the Brockmans *or* their specific assumption of such liability in the deed of conveyance"; that on the same day there was deposited in said Escrow, No. 73022, a deed from Watrous and wife to the Brockmans "purporting to convey the premises in question and containing a statement that the grantees (the Brockmans) assumed and agreed to pay the two mortgages on the premises"; that the deed was so deposited and recorded "without the knowledge or consent of these defendants" (the Brockmans); that thereafter the Brockmans "entered into possession" of the premises and "paid a considerable amount of money on account of interest and principal on the lien sought to be foreclosed herein"; but that they "never at any time accepted or knew about said deed." They denied that Watrous was indebted to complainant in the sum of $20,000, and alleged that Watrous negotiated a loan for $19,000, agreed to pay a commission of $1,000, and gave his note and trust deed for $20,000, and that said note is usurious and in violation of section 6 of chapter 74 of the Illinois statutes (Cahill's Stat. 1927, p. 1531). They denied that complainant's lien was superior to that of the Central Oak Park State Bank, and they prayed that complainant's bill be dismissed for want of equity.

In the foreclosure decree in question, the court, after making numerous findings, adjudged and decreed *inter alia*, (a) that the master's report be approved and confirmed; (b) that the premises be sold at a public sale

to be made by the master unless within three days the defendants, or some of them, pay to complainant the sum of $25,468.58 (the sum included $3,000 for its solicitor's fees), and also pay to Central Oak Park State Bank the sum of $6,097.22, and also pay to Theo. Ebert & Co. the sum of $1,441.04, together with all costs, master's fees, expenses, etc.; (c) that if the proceeds of the sale be not sufficient to pay the complainant, said bank and said Theo. Ebert & Co. in full, the master shall proceed to take evidence to determine to what extent the labor and materials furnished by Theo. Ebert & Co. enhanced the value of the premises; (d) that if the remainder of the proceeds be not sufficient to pay said amounts, interest and costs, due to complainant, said bank and Theo. Ebert & Co. in full, they and each of them "shall be entitled to a judgment for such deficiency as shall be found due to them respectively against the defendants," Watrous and wife and the two Brockmans, "who are personally liable therefor," etc.; (e) that the premises shall be sold subject to the lien of the prior trust deed to the Garfield State Bank; (f) that the cross-bill of the Brockmans be dismissed for want of equity; and (g) that the receiver continue to act as such until the further order of the court.

The present transcript does not disclose whether or not after the sale there was a deficiency, but we are informed that at a master's sale, held on June 3, 1930, the premises sold for $17,500, and that there was a deficiency.

In said decree, among the court's findings, are that the sums of $300 to be paid upon the principal note of $20,000, each for the months of April, May, June, July and August, 1928, together with interest thereon to August 30, 1928, were duly paid; that when the final instalment of said note, in the sum of $18,500, became due and payable on September 30, 1928, the sum

of $250 was paid upon the principal thereof, and interest in the sum of $92.50, up to and including September 30, 1928; that *all of said payments* were made *by the Brockmans,* "who up to that time had been in possession of said premises and were collecting the rents"; that after said deed of May 9, 1928, was executed and acknowledged, it was, on that day and in the presence of and with the knowledge and consent of the two Brockmans, handed to the Chicago Title & Trust Co. to be filed for record at once; that when it was so handed to the Title & Trust Co. the two Brockmans *"had full knowledge of all the terms and conditions of said deed* and *accepted* the deed"; that thereafter they "entered into possession of said real estate . . ., and commenced to and did collect the rents from the tenants thereof until November 1, 1928; and that under the terms of the deed complainant has the right to a deficiency decree, in case a deficiency shall be had upon the sale of the premises, against said defendants (the Brockmans)."

The main contention of counsel for the Brockmans is that the finding of the court (that the Brockmans had full knowledge of the terms and conditions of said deed of May 9, 1928, and accepted it with knowledge of the assumption clause in it), is against the weight of the evidence. We cannot agree with the contention. While both of the Brockmans testified in substance that they did not have such knowledge and did not knowingly accept a deed having such an assumption clause in it, the testimony of other witnesses, corroborated by facts and circumstances in evidence, is to the contrary, and clearly establishes, we think, their acceptance of the deed and their ratification of the assumption clause therein contained. The evidence shows that, in addition to their taking possession of the premises under the deed shortly after its date, and in addition to their collecting the rents and man-

aging the building until about November 1, 1928, the Brockmans paid the aggregate sum of $1,750 on the principal of the mortgage indebtedness in question. These payments, in our opinion, constitute evidence of conduct on their part denoting an acceptance of the assumption clause in the deed. In *Ludlum v. Pinckard*, 304 Ill. 449, it appears that certain real estate was conveyed to Mrs. Pinckard by a deed, containing an assumption clause similar to the one in the present deed, and there was no evidence of her assent to the clause, or of her knowledge thereof, except the collection by her of the rents and the payment by her of a certain sum on the principal of the mortgage. The superior court decreed, following the master's findings, that she had assumed the obligation of paying off the mortgage and was personally liable for any deficiency, etc. The first division of the Appellate Court for this district (221 Ill. App. 135, 138) reversed the decree and remanded the cause with directions to vacate that part of the decree providing for a deficiency judgment against her. The Supreme Court, however, on writ of error, reversed the judgment of the Appellate Court and affirmed that of the superior court, saying (pp. 453–4):

"The evidence shows that by letter she sent a payment of $1,000 on this mortgage . . . . It does not appear that the money came from the rents of the property or from any other source except the personal funds of defendant in error. She contends, however,— and in this she is supported by the Appellate Court,— that this is merely an evidence of a desire on her part to free the property of the lien and not evidence of acceptance on her part of the assumption clause of the deed. With this we cannot agree. In the absence of any proof limiting the effect of such payment, we are of the opinion that it must be taken as an act of assent

on her part to the assumption clause of the quit-claim deed to her. This payment undoubtedly establishes actual knowledge on her part of the existence of this mortgage. It also negatives any repudiation of the assumption clause in the deed and constitutes evidence of conduct on her part denoting an acceptance of such clause. It is not necessary, to show an acceptance of such a clause, that the grantee in express language accepted or ratified it. Such may be shown by any facts and circumstances evidencing such acceptance. We think that under the circumstances of this case this payment on the mortgage must be taken as evidence of acceptance of the assumption clause in the deed.''

Another fact or circumstance in the present case, tending to show that the Brockmans regarded the mortgage as their own obligation, is their trip to the office of Homer H. Schneider, president of complainant, in the latter part of September 1928, for the purpose of signing papers for a renewal or extension of the mortgage. It appears, however, that no renewal or extension was consummated because Schneider insisted upon an assignment of the rents of the building and the Brockmans would not consent to give such an assignment. And we think that the holdings in the case of *Moran v. Pellifant,* 28 Ill. App. 278, wherein Moran (as grantee in a deed containing a provision that he as such grantee would assume and pay a mentioned incumbrance) contended that he had not read the deed and was not aware of the assumption provision, are in point. The court says (p. 282):

''The defendant seeks to avoid the force of this provision in his deed by saying that he did not know it was in his deed, and that he did not read his deed and had it recorded without reading. In the absence of proof to the contrary we must treat defendant Moran

as a man having reasonable business qualifications and of reasonable intelligence. In the light of this presumption and the evidence in the case, we regard his explanation of this clause in the deed as wholly insufficient. . . . Nor is it consistent with reason or common experience that men accept deeds without reading them or having them read to them, and so not knowing what land or what title they are getting or what incumbrance they are assuming.''

And we do not think there is any substantial merit in the further contention of counsel for the Brockmans that the court ''erred in failing to find that the note and trust deed of Watrous and wife, herein sought to be foreclosed, were without consideration and void *as to the Brockmans.*'' The validity of the trust deed was not questioned in the superior court and should not be allowed to be questioned here. Furthermore, it appears from the contract executed by the Brockmans that it was specially provided that the purchase by them of the property was subject to the lien of the trust deed, and in the escrow agreement it was also provided that said purchase was to be subject to said lien. In *Terre Haute Trust Co. v. Wells Whip Co.*, 210 Ill. App. 602, 607, it is said: ''The rule as stated by Pomeroy in his Equity Jurisprudence, sec. 1205, is that: 'A grantee who thus takes a conveyance subject to a mortgage is presumed to have included the mortgage debt in the purchase price, and is not, therefore, permitted to dispute the validity of the mortgage; in this respect he is in the same position as one who expressly assumes the mortgage.' ''

Counsel further contend that the court ''erred in failing to find that complainant had charged and contracted for interest in excess of 7 per cent per annum to be paid by Watrous on account of the moneys, if any, actually loaned to him on account of the note and trust deed, all of which was in violation of the usury

statute." We cannot agree with the contention because (1) we do not find in the present record sufficient evidence from which to determine whether or not the note and mortgage were in fact usurious, and (2) because we think that, even if the note and mortgage were tainted with usury, the Brockmans by their assumption and agreement to pay the indebtedness secured by said mortgage are precluded from raising the question of usury. In *Crawford v. Nimmons,* 180 Ill. 143, 147, it is said: "The privilege of pleading usury is personal to the mortgagor and those who are in privity with him, but if there is no agreement or understanding about it his grantee will have the right to make the defense." After citing several cases and discussing others the court continues (p. 148): "In *Essley v. Sloan,* 116 Ill. 391, the court found, from the evidence, that the incumbrances were figured up and amounted to $7.68 per acre, which amount was counted in to make up the price to be paid for the land. The incumbrances formed part of the consideration for the purchase, and it was immaterial what the presumption would be without proof as to their forming a part of the consideration. In such a case as that it would be permitting a fraud to allow the grantee to plead usury. If the mortgagor chooses to affirm his contract and sets apart, out of the purchase price for the complete title, an amount sufficient to pay it, whether with an express agreement of the grantee to make such payment or with an option to either pay or suffer foreclosure, the grantee cannot question the amount. If the usury has become a part of the consideration in the agreement between the mortgagor and his grantee, it is an affirmance of the debt by the mortgagor, and when the grantee contracts with a view to the payment of the incumbrance, equity demands that he shall pay it or lose the property." In *Franklin County Building & Loan Ass'n v. Blood,* 255 Ill. App. 175, 185, it is said:

"Where property that is subject to a mortgage is conveyed, it need not be expressly stated in the deed that the mortgage deed is a part of the consideration, if it can be reasonably inferred that the incumbrance is a part of the consideration for the purchase price. Whether it is so agreed in express terms is not material. The legal effect is the same. Galloway purchased this property subject to the incumbrance with full knowledge thereof, and it in no way concerns him as to whether the contract was tainted with usury as between Blood and the Building & Loan Association." (Citing several cases. See, also, *Schiele v. Anderson,* 252 Ill. App. 390, 394.)

It is finally contended that the court "erred in allowing to complainant grossly excessive and exorbitant solicitor's fees ($3,000)." We cannot agree with the contention. The court found in the decree that "the evidence shows that the sum of $3,000 is a fair, reasonable, usual and customary fee for like services as those rendered and to be rendered in this cause by the solicitors for complainant, considering the amount involved." When consideration is given to the amount of legal work that said solicitors performed because of the defenses interposed by the Brockmans, we think that the court's allowance was a proper one and should not be disturbed. (See *Follansbee v. Northwestern Mut. Life Ins. Co.,* 87 Ill. App. 609, 611; *Wattson v. Jones,* 101 Ill. App. 572, 573.)

Finding no reversible error in the present transcript the foreclosure decree of the superior court of May 2, 1930, is affirmed.

*Affirmed.*

KERNER and SCANLAN, JJ., concur.